UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

CHARLES MCGLOTHAN,

        Plaintiff,

v.

UNKNOWN AIKENS et al.,

        Defendants.
_____/

Case No. 2:23-cv-126

Honorable Maarten Vermaat

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.7.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Mailroom Staff Unknown Aikens, Resident Unit Manager Unknown Lacrosse, Business Office Manager K. Benoit, and Resident Unit Manager Unknown Derry.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff alleges that on March 7, 2023, a book ordered by Plaintiff through an approved vendor was rejected by Defendant Aikens because of small advertisements in the back of the book. The book was entitled "Natural and Naked." (ECF No. 1, PageID.4.) Plaintiff states that the advertisements are covered by MDOC Policy Directive 05.03.118, ¶ NN(5), which exempts small advertisements from being used as a reason to reject a publication unless they depict or appear to promote sexual acts involving children. Plaintiff states that the book has previously been allowed for purchase by the MDOC since 2017. Plaintiff contends that Defendant Aikens' rejection was motivated by her personal views and biases, not on an actual violation of policy.

In support of his claim that he should have been allowed to receive the book at issue in this case, Plaintiff attaches a copy of a receipt showing that he received a book entitled "Naked Girls Club" in October of 2022, which Plaintiff states had the same advertisements. (ECF No. 1-2, PageID.15.)

On March 8, 2023, Plaintiff received a hearing for the notice of intent/mail rejection held by Defendant Lacrosse and was notified that Defendant Lacrosse needed more information. Plaintiff met with Defendant Lacrosse again the next day and was told that Defendant Lacrosse still needed more information. On March 13, 2023, Plaintiff showed Defendant Lacrosse a copy of Policy Directive 05.03.118, ¶ NN(5) in support of his claim that the rejection was invalid.

Plaintiff claims that as of March 16, 2023, he had not received an administrative report, so he filed a grievance regarding the rejection of his mail. Plaintiff's grievance was rejected as nongrievable on March 21, 2023, because he had not yet had a hearing on the rejection. (ECF No. 1-6, PageID.33.) On April 6, 2023, twenty-two days after the book was rejected, Defendant Lacrosse issued a hearing report in which he noted that non-Defendant Norma Killough had reviewed the book and found that it included dozens of graphic photographs filling multiple pages,

4

many of which clearly violate multiple sections of the MDOC Mail Policy. (ECF No. 1-3, PageID.22.) Plaintiff claims that on April 26, 2023, Defendant Derry reheard Plaintiff on the mail rejection and admitted that Plaintiff was correct that the book "Natural and Naked" did not violate the mail policy. However, according to Plaintiff, Defendant Derry stated that he would not go against fellow staff members, primarily non-Defendant Norma Killough.

Plaintiff filed a grievance regarding the situation on April 8, 2023, which was responded to by Defendant Derry on April 17, 2023. (ECF No. 1-2, PageID.13, 16–17.) In the grievance response, Defendant Derry states:

> On 3/7/23 McGlothan received the book "Natural and Naked," Mail room staff rejected the publication quoting PD 05.03.118 NN, 14. On 3/7/23 Rum M. Lacrosse completed a[n] Administrative Hearing Report on the rejection. Rum Lacrosse upheld the NOI quoting Norma Killough reviewed the materials and indicates "The volume of the photographs including dozens of gra[ph]ic phot[o]graphs filling multiple pages in the publication clearly violates multiple sections of the MDOC policy.
>
> Book to be reviewed for placement on the restricted pub[l]ication list.

(*Id.,* PageID.16.) Plaintiff's appeal was denied at steps II and III. (*Id.*, PageID.18–20.) On April 19, 2023, Plaintiff attempted to send a kite to Defendant Benoit. (ECF No. 1, PageID.5.) Plaintiff received a response to his kite from Defendant Aikens on April 24, 2023. (*Id.*)

Plaintiff states that Defendants' failure to comply with MDOC policy violated his rights under the First and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

5

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **A.    Defendant Benoit**

Plaintiff alleges in a conclusory manner that Defendant Benoit failed to follow the mail policy and refused to adhere to rules and regulations. (ECF No. 1, PageID.6.) However, Plaintiff fails to allege any specific facts about how Defendant Benoit failed to follow the mail policy.

6

Instead, Plaintiff alleges that he *attempted* to send a kite to Defendant Benoit on April 19, 2023; however, Defendant Aiken responded to this kite, rather than Defendant Benoit. (*Id.*, PageID.5.)

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Further, a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Here, Plaintiff's allegations do not suggest that Defendant Benoit even knew that Plaintiff had submitted his kite. (*See id.*) Under these circumstances, Plaintiff has failed to allege facts to show that Defendant Benoit engaged in any active unconstitutional behavior. Therefore, Plaintiff's claims against Defendant Benoit are properly dismissed. *See, e.g.*, *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

### B. Due Process

As noted above, Plaintiff claims that the rejection of his book violated the MDOC's policies and procedures regarding the rejection of prisoner mail. The policies and procedures that were in effect during the relevant time period are set out in MDOC Policy Directive 05.03.118 (eff. Mar. 3, 2018). With regard to books, magazines, and other publications, the policy provides that prisoners may receive them only if:

> 1. Ordered by a member of the public from an internet vendor identified in Attachment A or from the publisher and sent directly to the prisoner by the vendor or publisher,
>
> 2. Ordered by the prisoner from a vendor identified in Attachment B or from the publisher and sent directly to the prisoner from the vendor or the publisher, or

> 3. The prisoner is approved to take a correspondence course pursuant to PD 05.02.119 "Correspondence Courses," and the publication is sent directly from the approved correspondence school.
>
> All prisoner orders must be through established facility ordering procedures. Under no circumstances shall prisoners in a correctional facility be permitted to order a publication from an internet vendor

*Id.* ¶ Z. The policy calls for rejection of mail "that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner." *Id.* ¶ NN. Several categories of mail are considered to pose such risks under all circumstances, including mail that violates ¶ Z, certain nude photographs, photographs depicting actual or simulated sex acts, mail encouraging the commission of criminal activity, and mail depicting or appearing to promote sexual acts with children. *Id.*

The policy directive establishes a procedure that is to be followed if mail is believed to violate the restrictions that includes notice and a hearing. *Id.* ¶¶ VV–AAA. When a newspaper, magazine, book, or other publication is determined to violate the restrictions, there are additional steps involving the warden and the CFA Deputy Director that result in a publication being placed on the "Restricted Publications List." *Id.* ¶¶ BBB–DDD. Publications on the list are rejected without hearing. *Id.* The procedure provides for appeals of the rejection decision. *Id.* ¶¶ EEE–FFF. If the rejection is upheld, the publication can be returned at the prisoner's expense, mailed to someone else at the prisoner's expense, stored for a period of time so that the prisoner may designate someone to pick up the publication, or, if none of those options are feasible, destroyed. *Id.* ¶ HHH.

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process

claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

To the extent Plaintiff contends that he was deprived of his property without due process, his claim fails on two levels. First, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Id.* at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112 ¶ B (eff. Apr. 26, 2021). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (eff. Mar. 27, 2017). Alternatively, Michigan law authorizes actions in the Court of

Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Moreover, pursuant to MDOC Policy Directive 05.03.118 ¶ HHH, Plaintiff has the option to have the book in question returned to the sender or sent to another person. (ECF No. 1-3, PageID.15.) Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Moreover, it is clear that Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

The Court notes that Plaintiff attached copies of the hearing report and the grievance record to his complaint. Plaintiff's allegations and attachments to his complaint clearly show that he received all the process due to him with regard to the rejection of the book "Natural and Naked." Plaintiff received a notice of mail rejection for the book in question. (ECF No. 1-2, PageID.12.)

10

Additionally, Plaintiff requested a hearing and was provided that hearing, where he had the opportunity to challenge the rejection. (*See id.*; *see also* ECF No. 1-3, PageID.22.) MDOC Policy Directive 05.03.118 also allows for appeal of the decision. MDOC Policy Directive 05.03.118 ¶¶ EEE, FFF (eff. Mar. 1, 2018).[2]

Accordingly, for all of the reasons set forth above, Plaintiff's due process claims are properly dismissed.

### C. First Amendment

Plaintiff asserts that Defendants violated his First Amendment right to receive the publication at issue in this case. There is no question that the First Amendment applies to a prisoner's receipt of incoming mail; but the right is subject to limitation by legitimate penological interests. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992), *abrogated in part on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996). The Supreme Court has held that prison regulations which allow a warden to reject publications for good reason, pursuant to specific criteria, do not violate the First Amendment because such

---

[2] Plaintiff suggests that he was informed that the book in question would be placed on the restricted publications list. (*See* ECF No.1-2, PageID.16.) As an initial matter, from the facts alleged in Plaintiff's complaint, it is unclear whether the book in fact has been placed on this list. Regardless, to the extent Plaintiff claims that placing the book on the restricted publications list violates his due process rights, he fails to state such a claim. As set forth in *Sandin v. Conner*, 515 U.S. 472 (1995), a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Here, Plaintiff does not, and cannot, demonstrate that the placement of a book on the restricted publications list would cause him to experience atypical and significant hardship. Even if Plaintiff were to claim there was some vocational or educational reason for him to have the book, federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss").

regulations are reasonably related to legitimate penological interests. *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989).

> Emphasizing the extreme deference accorded to prison officials, the Supreme Court stated:
>
> We deal here with incoming publications, material requested by an individual inmate but targeted to a general audience. Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct. Furthermore, prisoners may observe particular material in the possession of a fellow prisoner, draw inferences about their fellow's beliefs, sexual orientation, or gang affiliations from that material, and cause disorder by acting accordingly. As the Deputy Solicitor General noted at oral argument: "The problem is not. . . in the individual reading the material in most cases. The problem is in the material getting into the prison." In the volatile prison environment, it is essential that prison officials be given broad discretion to prevent such disorder.

*Id.* at 412–13 (citations omitted).

The Sixth Circuit, in unpublished decisions, has addressed challenges to prior versions of MDOC Policy Directive 05.03.118. In 2003, the Sixth Circuit applied *Turner* and concluded that the 2001 policy was reasonably related to the legitimate penological interest of prison security. *See Ward v. Jones*, No. 02-1924, 2003 WL 1795736, at *1–2 (6th Cir. Mar. 31, 2003) (analyzing the portion of the policing prohibiting "photographs depicting actual or simulated sexual acts"). The Sixth Circuit noted that prisoners in Michigan could still receive less explicit photographs of an arguably sexual nature. *Id.* The Sixth Circuit also upheld a prior version of MDOC Policy Directive 05.03.118 in *Rogers v. Martin*, 84 F. App'x 577 (6th Cir. 2003). In doing so, the *Rogers* court noted:

> [T]he MDOC policy did not violate the First Amendment because: (1) it was rationally related to the goal of a safer prison environment; (2) prisoners had alternative means of acquiring sexually explicit materials such as written descriptions of sex acts and nude photographs that do not depict sexual acts; (3) accommodating the prisoners' right to receive sexually explicit materials in the form of photographs of sexual acts could adversely affect prison guards, other inmates, and the allocation of prison resources by creating a sexually charged atmosphere; and (4) redacting every publication containing photographs that violate the rule is not a ready alternative to disposing of the offending magazines

> because of the administrative burden of case-by-case redaction. *See Turner v. Safley,* 482 U.S. 78, 90–91, 107 S .Ct. 2254, 96 L. Ed. 2d 64 (1987). Although Rogers argued to the contrary, the defendants were not required to submit evidence that the banned materials actually caused problems in the past or are likely to cause problems in the future, as long as it is plausible that they believed the policy would further a legitimate objective. *See, e.g.*, *Mauro v. Arpaio,* 188 F.3d 1054, 1060 (9th Cir.1999).

*Rogers*, 84 F. App'x at 579. This Court has also previously upheld MDOC Policy Directive 05.03.118. *See, e.g.*, *Richards v. Snyder*, No. 1:14-cv-84, 2015 WL 3658836, at *8–11 (W.D. Mich. June 12, 2015) (analyzing the 2013 version of Policy Directive 05.03.118); *Johnson v. Deeren,* No. 2:12-cv-205, 2012 WL 6019365, at *11–12 (W.D. Mich. Dec. 3, 2012) (finding that the restriction of *Penthouse* for including "sexual simulated acts" in MDOC Policy Directive 05.03.118, ¶ MM(14) (effective Sept. 14, 2009) was clearly related to a legitimate penological interest); *see also Houston v. Caruso,* No. 1:07-cv-960, 2008 WL 5235869, at *7 (W.D. Mich. Nov. 24, 2008) (upholding MDOC Policy Directive 05.03.118, ¶ HH(15) (effective Jan. 1, 2006), which prohibited photographs depicting actual or simulated sexual acts by one or more persons).

Plaintiff concedes that the book at issue contains prohibited photographs but asserts that these were merely part of small advertisements and that Policy Directive 05.03.118 ¶ NN(5) specifically exempts such advertisements from being used to justify a rejection unless they depict or appear to promote sexual acts involving children. Initially, the Court notes that claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated MDOC Policy Directive 05.03.118 therefore fails to state a claim under § 1983.

13

Moreover, contrary to Plaintiff's assertion, a non-party to this case, Norma Killough, reviewed the book and found that it included "dozens of graphic photographs filling multiple pages," and that many of the photographs included acts of sadism, masochism, and bondage, as well as sexual acts by one or more persons. (ECF No. 1-3, PageID.22.) As noted above, Plaintiff does not deny that the book contains such photographs, but merely asserts that they are part of attached advertisements, rather than the body of the volume.

Accepting Plaintiff's allegations as true, consideration of the four *Turner* factors puts an end to his "regular mail" First Amendment claim regarding the book he received. As this Court has previously determined in similar cases, given the nature of the photographs described in this action, there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it.[3] *Cf. Richards*, 2015 WL 3658836, at *11 (discussing that in applying *Turner*, "[t]he *Ward* [*v. Jones*, 64 F. App'x 442 (6th Cir. 2003),] court determined that 'the disputed photographs [that depicted sexual acts] contribute to a hostile work environment for staff, a sexually charged and hostile environment for prisoners, offensive conduct and hostile acts by prisoners and violations of visiting room policy,'" and the "*Ward* court recognized [that] redacting every publication containing photographs that violate the rule is not a ready alternative because of the administrative burden of a case-by-case redaction" (citation omitted)).

---

[3] The Court notes that Plaintiff pleaded no contest to three counts of first-degree criminal sexual conduct (person under 13, defendant 17 or older) and two counts of second-degree criminal sexual conduct (person under 13, defendant 17 or older). MDOC's Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=845357 (last visited July 31, 2023). The Court has not considered this in reaching its decision, but simply provides this as background information.

Therefore, for these reasons, Plaintiff's First Amendment claims are properly dismissed for failure to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: August 9, 2023 /s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge